UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARC MALLARD, | ) |
|     Petitioner | ) **Case No:** |
| v. | ) |
| MICHELLE EDMARK, IN HER CAPACITY AS WARDEN OF THE NEW HAMPSHIRE STATE PRISON FOR MEN | ) |
|     Respondent. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF EQUITABLY TOLLING PETITIONER'S FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

The Petitioner, Marc Mallard, by and through counsel, Wadleigh, Starr & Peters, P.L.L.C., respectfully submits this Memorandum of Law in support of why his petition should not be dismissed as barred by the statute of limitations. Mr. Mallard asks this Court to equitably toll the statute of limitations for the reasons set forth in this Memorandum of Law.

### Factual Summary

Mr. Mallard, an African American man who was accused of violent crimes against a white woman, was found guilty by an all-white jury. The incident underlying the charges involve an argument between Mr. Mallard, a Black man, and the alleged victim, a white woman who shares a child with Mr. Mallard, stemming from the accusation that Mr. Mallard had extra-relationship intimate partners. The alleged victim testified that he was often absent from his parenting duties.

Despite the stereotypical implications of an African American man assaulting the white mother of his child during an argument over his absence from the home and relationships with other women, and even after a potential juror expressed his own racial prejudice against Mr. Mallard,

1

Mr. Mallard's trial counsel requested no *voir dire* questions concerning racial prejudice. Additionally, throughout the course of the trial, both the State and Mr. Mallard's trial counsel injected unnecessary racial stereotypes into the case. The State engaged in a line of questioning of the alleged victim that had the effect of painting Mr. Mallard as the stereotypical "bad Black father." Later, and more concerning, Mr. Mallard's trial counsel characterized Mr. Mallard as "a big menacing black guy" to the all-white jury. His trial counsel requested no jury instruction addressing race or other curative measure to mitigate these existing biases.

Mr. Mallard's trial counsel permitted the all-white jury to judge Mr. Mallard based on his race, rather than on his guilt or innocence. His trial counsel effectively justified prejudicial considerations by referring to him as a "big, menacing black guy," even though he himself had no need to rely on that characterization in his closing argument. Without an immediate avenue of relief during the trial, Mr. Mallard now seeks habeas relief upon the newly discovered meritorious claims of implicit racial biases that have impeded his constitutional rights.

**Equitable Tolling**

Given the circumstances of this case, the proper calculation of the statute of limitations is controlled by 28 U.S.C. § 2244(d)(1)(A). The doctrine of equitable tolling applies to the facts of this case. Generally, the doctrine enables a court to extend a statute of limitations for equitable reasons. *Holmes v. Spencer*, 685 F.3d 51, 61–62 (1st Cir. 2012). To establish a foundation for equitable tolling, a petitioner must demonstrate that: 1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented him from filing his petition in a timely fashion. *Id.* at 62; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Despite the extraordinary circumstances that stood in Mr. Mallard's way, including his trial counsel's ineffective assistance and detrimental impact at trial, Mr. Mallard had been diligently

pursuing his post-conviction challenge to his conviction since his conviction was affirmed on direct appeal in January of 2015[1].

## I. Mr. Mallard has been diligently pursuing of his post-conviction rights.

As to the first prong of the equitable tolling test, the following timeline establishes that Mr. Mallard has diligently pursued his post-conviction rights from when his conviction became final:

- <u>February 5, 2015</u>.  Mr. Mallard, through counsel, filed a Motion for a New Trial, asserting that his trial counsel was ineffective.

- <u>May 16, 2015</u>.  Mr. Mallard submitted a grievance to the State Department of Corrections Commissioner, raising the issue of a supervising corrections officer being "highly bias . . . towards me," requesting transfer to the New Hampshire State Prison for Men in Concord.

- <u>March 18, 2015</u>.  Commissioner denied Mr. Mallard's request for transfer.

- <u>June 2, 2015</u>.  Trial court denied Mr. Mallard's Motion for a New Trial.

- <u>June 12, 2015</u>.  Mr. Mallard submitted one of many requests to transfer to the New Hampshire State Prison in Concord, citing his need to access its more-extensive law library.

- <u>July 13, 2020</u>.  Mr. Mallard, through counsel, filed a State Petition for Writ of Habeas Corpus, asserting ineffective assistance of counsel due to trial counsel's explicitly racialized comment, accompanied by failure to object to State's racialized line of questioning or seek a curative measure and failure to request *voir dire* on racial bias.

Further, Mr. Mallard is currently seeking state habeas relief on the grounds raised in this Federal Petition.  He now files this Petition in diligent pursuit of the newly discovered meritorious claims raised within and has therefore satisfied the first prong of the equitable tolling test.

## II. Extraordinary circumstances stood in Mr. Mallard's way from a timely filing.

---

[1] *State v. Mallard*, No. 2013-0673, 2015 WL 11071107 (N.H. Jan. 21, 2015)

**A. Ineffective Counsel steeped in implicit racial bias**

Ineffective assistance of counsel may constitute an "extraordinary circumstance" sufficient to equitably toll the statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  *See Holland v. Florida*, 560 U.S. 631, 653 (2010) (held that statute of limitations is subject to equitable tolling in cases where a state prisoner attorney's conduct rose to level of "extraordinary circumstance").  Here, the Sixth Amendment implications support a finding of equitable relief, which would also come at a time when the nation reckons with the issue of racial biases and its impact on the administration of justice.  Counsel "need not exhibit any bad faith, dishonesty, divided loyalty, mental impairment or the like in order for attorney's unprofessional conduct to rise to level of such an 'extraordinary circumstance'" beyond the petitioner's control.  *Holland*, 560 U.S. at 652.  In *Holland*, the court held that equitable tolling was appropriate because the defense attorney's conduct constituted far more than "garden variety" or "excusable neglect" when he failed to file his client's petition on time.  560 U.S. at 652.

Here, Mr. Mallard's trial counsel's conduct constituted far more than such garden variety or excusable neglect: his reference to Mr. Mallard as "a big menacing black guy," among other stereotypes presented before the all-white jury, qualifies as the very kind of extraordinary circumstance that would deem equitable tolling proper relief.  When considering the totality of the circumstances present at trial—trial counsel's disregard to obvious racial biases presented through the State's witness, alongside his own injection of harmful racial stereotyping and failure to request *voir dire*, jury instructions, or other curative measures with regard to race—such conduct constitutes a showing of extraordinary circumstance.

**B. Judicial expansion of equitable relief and acknowledgement of racial bias impact since Petitioner's 2015 conviction efforts**

Since Mr. Mallard's conviction was affirmed in 2015, courts have reexamined the underlying equitable principles of habeas relief and recently displayed a trend toward broadening equitable

4

exceptions, especially in the circumstance of ineffective assistance of counsel. *See Martinez v. Ryan*, 566 U.S. 1 (2012) (held that ineffective assistance at trial provided cause for a procedural default); *Christeson v. Roper*, 574 U.S. 373 (2015) (expanded extraordinary circumstance of "attorney misconduct" to include conflicts of interest); Erica Hashimoto, *Reclaiming the Equitable Heritage of Habeas*, 108 Nw. U. L. Rev. 139, 150 (2013). Given that the granting of equitable relief has traditionally been based on a petitioner's voluntary conduct, ineffective assistance doubles down as an additional obstacle for a petitioner by creating a constitutional concern that would merit such equitable considerations by the Court. Mr. Mallard's case also invites the concern of racially motivated ineffective assistance, something the courts have also addressed in recent years.

Just this year, the Ninth Circuit granted habeas relief based on defense counsel's failure to provide reasonably competent representation due to implicit racial biases. *Ellis v. Harrison*, 947 F.3d 555, 562 (9th Cir. 2020). Importantly, it pointed to the difficulty of making a prima facie *Strickland* showing when "the cumulative effect will be to impair the defense, but there is no way to pinpoint how it does so." *Id.* Further, the Fourth Circuit, in 2016, recognized a due process violation based on racial stereotypes presented before an all-white jury. *Bennett v. Stirling,* 842 F.3d 319 (4th Cir. 2016). The same year, the Supreme Court of the United States reversed a denial of a habeas relief due to discriminatory intent during *voir dire. Foster v. Chatman*, 136 S. Ct. 1737 (2016). In 2017, it granted habeas relief based on the use of the racial stereotype that African American men are violence prone. *Buck v. Davis*, 137 S. Ct. 759, 778 (2017). Notably, it set aside any contemplation of guilt or innocence, and directly addressed the harm of racial bias embedded at trial. *Id.*

Amidst demands for racial justice after increased media coverage of state violence against unarmed African Americans, recent research concludes that the most dramatic and devastating impact of implicit racial bias "is the racial disparity that permeates every level of the criminal justice

system." John Tyler Clemons, *Blind Injustice: The Supreme Court, Implicit Racial Bias, and the Racial Disparity in the Criminal Justice System*, 51 Am. Crim. L. Rev. 689, 689 (2014).

Trial counsel's disregard of racial implications throughout the trial and his own injection of racial stereotyping is precisely the kind of damaging implicit racial bias that the courts in *Ellis*, *Bennett*, *Foster*, and *Buck*, as well as countless scholars have recently addressed.  Since Mr. Mallard's conviction was affirmed, the national discourse has intensified, and this offers additional support to permit equitable tolling.  This is not to say that since Mr. Mallard's trial, the nation has newly discovered the presence of racial bias.  Rather, recent developments have identified the pervasive, pernicious effect of racial bias in trial courts across the country.  *See* 51 Am. Crim. L. Rev. at 694.

### C. Additional Impediments to Filing Timely Petition

Mr. Mallard was incarcerated at the Northern New Hampshire Correctional Facility in Berlin from November 13, 2013 until February 2018, when he was finally transferred to NHSPM in Concord.  During the years he was incarcerated in Berlin, Mr. Mallard was deprived of adequate access to law library materials necessary to develop additional post-conviction claims.  In fact, Mr. Mallard had tried for years to get transferred to NHSPM, raising the issue of his need for access to an adequate law library as a basis for his transfer. Exhibit A.  Therefore, for over four years, his ability to timely file this Petition was restricted by inadequate access to the legal materials necessary to develop the claims brought within his Petition.  The Federal Habeas Corpus Practice and Procedures discusses cases on prison interference with a defendant's ability to file post-conviction pleadings, including issues on access to law library issues, in the context of impediments created by state action.  Under § 2244(d)(1), "the limitation period shall run from the latest of (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or state laws is removed, if the applicant was prevented from filing by such state action."  This is because such impediment would constitute "extraordinary circumstance" outside of petitioner's

control that would prevent timely filing. *See Bounds v. Smith*, 430 U.S. 817 (1977) (held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (held that prisoners must be provided with "the tools they need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (held that district court erred in categorically rejecting argument that unavailability of legal materials about AEDPA in prison law library, which prevented petitioner from learning of limitations, constituted "impediment" for purpose of § 2244(d)(1)(B)); *Egerton v. Cockrell*, 334 F.3d 433, 438 (5th Cir. 2003) (held that prison law library's failure to provide copy of AEDPA constituted "impediment ... created by state action" that tolled limitations period and rejected State's contention that an "affirmative action" must be taken to impede the filing of a habeas application).

The obstacle posed by the lack of access to adequate legal materials sufficient to develop the claims raised in his Petition are compounded by the fact that Mr. Mallard was subject to the biased conduct of a corrections officer, a Sergeant responsible for supervising Mr. Mallard while incarcerated in Berlin. In fact, Mr. Mallard filed a grievance regarding this fact. Exhibit B. Clearly, being subjected to the supervision of a biased corrections officer served as an impediment to raising a claim based on racial bias, and it furthers the equitable basis for tolling the statute of limitations and allowing this Petition.

## Conclusion

The combination of Mr. Mallard's trial counsel's detrimental impact before the all-white jury, the recent national demand for racial justice, alongside the biased sergeant and impediments to legal

research access that Mr. Mallard faced while incarcerated in Berlin, constitutes such exceptional circumstance in which equitable relief is appropriate.

The pervasiveness of racial biases presented throughout Mr. Mallard's case—amidst the national conversations on race—is the type of circumstance which perpetuates systemic inequality and the justice system must consider the impact of rejecting such equitable relief.  Even if this Court finds that there is no excusable reason for the untimely filing, it is in the interest of justice to contemplate how implicit biases, by definition, often surfaces indirectly or inadvertently and can be difficult to detect.  Considering the interest of justice is not a novel proposition: in *McQuiggin v. Perkins*, the Supreme Court of the United States recognized a 'miscarriage of justice' exception to the statute of limitations.  *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (recognized that equitable relief may be available if petitioner can show that no reasonable juror would have convicted him in light of the new evidence).  While *McQuiggin* characterizes actual innocence as a miscarriage of justice, this is not to say that there are other injustices that may merit equitable relief.  In *State v. Cabrera*, the court ordered a new trial, even though it found harmless error, on the grounds that "the improper injection of race can affect a juror's impartiality and must be removed from courtroom proceedings to the fullest extent possible." *State v. Cabrera*, 700 N.W.2d 469, 475 (Minn. 2005).

> Affirming this conviction would undermine our strong commitment to rooting out bias, no matter how subtle, indirect, or veiled. Accordingly, in the interests of justice and in the exercise of our supervisory powers, we reverse appellant's conviction and remand for a new trial. *Id.*

Here, negative racial stereotyping to an all-white jury is the very kind of harm that deprives an individual of his most basic constitutional rights.  Habeas corpus "pertains to an area of the law where equity finds a comfortable home." *Holland*, 560 U.S. at 647, *see Munaf v. Geren*, 553 U.S. 674,

693 (2008).  Therefore, a finding of equitable tolling applicable to Mr. Mallard's case would be in the interest of such justice.

                                          Respectfully submitted,

                                          Marc Mallard

                                          By his attorneys,
                                          Wadleigh, Starr & Peters, PLLC

Dated: July 23, 2020                              By: */s/ Donna J. Brown*
                                                                              Donna J. Brown, Bar No. 387
                                                                              Wadleigh, Starr & Peters, PLLC
                                                                              95 Market Street
                                                                              Manchester, NH  03101
                                                                              (603) 669-4140

                                                                              */s/ Michael G. Eaton*
                                                                              Michael G. Eaton, Bar No. 271586
                                                                              Wadleigh, Starr & Peters, PLLC
                                                                              95 Market Street
                                                                              Manchester, NH  03101
                                                                              (603) 669-4140